IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | CR05-00590-PHX-MHM |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Miqueas Correa-Lopez, | ) | |
| Defendant. | ) | |

Currently before the Court is Defendant's Motion to dismiss under 18 U.S.C. § 3282. (Dkt.#21). After reviewing the papers and hearing oral argument on January 18, 2006, the Court issues the following order.

**I.      Background**

On June 22, 2005, Defendant Miqueas Correa-Lopez was indicted for conspiracy to possess with the intent to distribute marijuana. (Dkt. #1).  He was arrested on September 26, 2005. (Dkt. #6). The indictment alleges in pertinent part:

> [b]etween on or about November, 1997, and continuing through on or about June 30, 2000, the exact dates are unknown, in the District of Arizona and elsewhere, defendant, MIQUEAS CORREA-LOPEZ, did knowingly and intentionally combine, conspire, confederate and agree together with other persons, known and unknown to the Grand Jury, to possess with the intent to distribute 1000 kilograms or more of a mixture or substance containing a detectable amount of marijuana...

On September 30, 2005, the government filed its notice of arrest of Defendant. The government alleges that the charges against Defendant arise out of his relationship as a marijuana supplier to the criminal organization, the "Champagne Crew" or the "Crew." Additionally, the Government alleges that the Defendant was present at the scene of a triple murder on June 30, 2000, during one of the alleged transactions between "Crew" members and Defendant and other co-conspirators, including his brother, Isac Correa-Lopez who was murdered. After the killings, Defendant allegedly fled to Mexico. Defendant was arraigned on September 28, 2005, and filed the present Motion to dismiss on November 21, 2005.

**II.    Analysis**

In his moving papers and at the hearing on January 18, 2006, Defendant argued to the Court that there is nothing before it that would suggest Defendant was in any way connected or involved in criminal activity continuing into the limitations period specified in the indictment, specifically, activity spanning to and through June 22, 2005. While, Defendant conceded that an overt act is not required to assert a valid claim of conspiracy pursuant to 21 U.S.C. § 846, he argues that the five year statute of limitations set forth in 18 U.S.C. § 3282 still bars the government's claim because of the lack of any evidence suggesting Defendant's involvement in the activities that occurred subsequent to June 22, 2000. Most significantly, the triple homicide that occurred on June 30, 2000.

Defendant is correct in that 18 U.S.C. § 3282 bars non-capital offenses that occur more than five years prior to the charged conduct. Specifically, 18 U.S.C. § 3282 provides in pertinent part:

> Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within <u>five years</u> next after such offense shall have been committed.

However, Defendant's argument is not correct regarding the lack of existence of evidence suggesting Defendant's criminal involvement in events occurring subsequent to June 22, 2000. As explained by the government in its response to Defendant's motion there

is substantial evidence suggesting Defendant's involvement in the conspiracy both prior to and subsequent to the June 22, 2000 cut-off date. For instance, testimony in the related trial before this Court, CR 01-486, from the other players in the conspiracy identifies Defendant as a source of the supply of marijuana. For instance, Kevin Stone, a member of the "Crew" testified that he transacted specifically with the Defendant for marijuana supply. (CR01-486, Dkt.#681, September 10, 2004 Transcript, pp. 51-53, ll. 21-8).[1] In fact, Mr. Stone testified that he had transacted several times with Defendant as well as his brother, Isac Correa-Lopez, whom he also referred to as "Nick." (Id. at pp.53-54, ll. 18-16).

More importantly, there is evidence demonstrating that the Defendant was involved in the events on June 30, 2000, a time within the limitations period. For example, the government has cited testimony from the Defendant's nephew, Cesar Lopez, that on the day of the triple homicide, he had been given a ride by Defendant to the scene of the crime after the Defendant phoned him. (CR01-486,Dkt.#605, May 27, 2004 Transcript, pp. 39-40, ll. 20-4). Before arriving at the scene the Defendant followed another vehicle from the apartment complex and took down its license plate. (Id. at p. 40, ll.10-15). After returning to the scene, Cesar Lopez went to the apartment and found the bodies of Defendant's brother and two others. The Defendant then fled to Mexico although he came back to Phoenix on several occasions subsequent to June 30, 2000. (Id. at pp. 43-45, ll.10-4). Lastly, Cesar Lopez testified that he had heard the Defendant and his deceased brother discussing a deal involving 300 pounds of marijuana six to eight months prior to the June 30, 2000 events, which contributed to his suspicion that the Defendant was involved in drug trafficking. (Id. pp. 37-38, ll. 20-5; pp. 60 ll. 4-12).

The testimony from Mr. Stone and Cesar Lopez establishes that there is evidence suggesting the Defendant was involved in drug trafficking activities with the "Crew" as well

---

[1] In Mr. Stone's testimony he identified government's trial exhibit 212 as that of the Defendant, and government's exhibit 90 as Isac Correa-Lopez, the deceased brother of the Defendant.

as was involved in the events of June 30, 2000. Moreover, at Defendant's request, the Court has reviewed a portion of the grand jury transcript addressing the indictment that was handed down on June 22, 2005. The testimony from the transcript is consistent with the evidence discussed above. Therefore, dismissal based upon 18 U.S.C. § 3282 is not warranted.

Defendant at oral argument also suggested that while there may be evidence of the Defendant's involvement in the conspiracy prior to June 30, 2000, he affirmatively pulled out of the conspiracy before the June 30, 2000 events. However, as discussed above there is, at the very least, a factual issue surrounding this issue that must be addressed during the course of the trial, not upon pretrial motion. See United States v. Butler, 41 F.3d 1435, 1446 (11th Cir. 1995) (noting that a conspirator accomplishes withdrawal from a conspiracy by "taking steps inconsistent with the conspiracy and communicating those acts in a manner reasonably calculated to reach the co-conspirator."); see also United States. v. Johnson, 956 F.2d 894, 906 (9th Cir. 1992), modified on other grounds, 969 F.2d 849 (9th Cir. 1992).

Accordingly,

**IT IS HEREBY ORDERED** denying Defendant's Motion to dismiss under 18 U.S.C. § 3282. (Dkt. #21).

DATED this 6th day of February, 2006.

_____
Mary H. Murguia
United States District Judge